**John Foster WALLACE, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 58910.**

Court of Criminal Appeals of Texas,
Panel No. 2.

Jan. 10, 1979.

Michael D. Murphy, Port Arthur, for appellant.

Bruce N. Smith, Dist. Atty. and John R. DeWitt, Asst. Dist. Atty., Beaumont, for the State.

Before ONION, P. J., and PHILLIPS and TOM G. DAVIS, JJ.

OPINION

ONION, Presiding Judge.

This is an appeal from an order revoking probation. On January 23, 1976, the appellant entered a guilty plea to an indictment

charging burglary in a bench trial and his punishment was assessed at seven (7) years' imprisonment. He was placed on probation following the suspension of the imposition of sentence subject to certain conditions, including a requirement that he not violate the penal laws of this state, etc.

On April 18, 1977 the State filed a three count motion to revoke probation. At a hearing on said motion on June 10, 1977, the State abandoned the first two counts and the appellant pled "true" to the third count charging unlawfully carrying a weapon, a club. Without hearing evidence, the record reflects:

"THE COURT: The Court finds that's true and probation you received January twenty-third, Nineteen-seventy-six is revoked, but I will not impose sentence at this time. I will delay that action until some further date. I hope that I don't have to take that action. I wish you the best of luck.

"DEFENDANT: Thank you, Your Honor."

The docket sheet reflects:

"Sentence deferred; defendant to serve 4 months Co. jail." [1]

No written order of revocation was then entered.

On August 17, 1977 the appellant's conditions of probation were modified, and he was ordered to report in person to his probation officer once every two weeks, "while on probation." It was obvious that appellant was then released from jail. A probation revocation data sheet dated December 3, 1977 reflects that appellant was arrested for public intoxication on November 30, 1977, and that upon being booked, a baggie of marihuana and "PCP" were found on his person. The data sheet noted appellant's probation was "revoked—deferred" and requested sentencing "due to the fact of this recent arrest for the above charges." On December 12, 1977 the State filed a motion requesting sentencing and alleging that after sentence was deferred the appellant was found in possession of a controlled substance, phencyclidine, possession of marihuana, and was found intoxicated in a public place. A warrant was ordered issued for his arrest by the trial court.

On January 16, 1977 appellant appeared in court with his court-appointed counsel, who questioned the procedure that had been used. On January 23, 1977 appellant's counsel urged his motion to quash the State's motion for sentencing. The motion was overruled and the State was ordered to file a motion to revoke. On January 31, 1978, at 9:30 a. m., the State filed its first amended motion to revoke probation. At 11:45 a. m. on that date, the appellant was before the court, who stated that in light of appellant's plea of "true" to the third count of the earlier revocation motion on June 10, 1977 sentence would be imposed and it was. Notice of appeal was given. The court then stated it would not act on the first amended motion to revoke probation and hold it in abeyance to see if its action was "vacated" by the Court of Criminal Appeals. Thereafter for the first time, a written order revoking probation was entered.

Article 42.12, § 8(a), provides in part:

"If the defendant has not been released on bail, on motion by the defendant the court shall cause the defendant to be brought before it for a hearing within 20 days of filing of said motion, and after a hearing without a jury, may either continue, modify or revoke the probation . . . If probation is revoked, the court may proceed to dispose of the case as if there had been no probation . . ."

█ It is clear from the statute that upon a revocation hearing the discretion to either continue, modify or revoke rests in the discretion of the trial judge. *Wise v. State*, 477 S.W.2d 578 (Tex.Cr.App.1972); *Soliz v. State*, 171 Tex.Cr.R. 376, 350 S.W.2d 566 (1961); *Gossett v. State*, 162 Tex.Cr.R. 52, 282 S.W.2d 59 (1955). If, however, pro-

---

1. Letters from the appellant in jail to the court show he believed he was serving the time for the charge of unlawfully carrying a weapon.

bation is revoked, the trial judge is to proceed as if there had been no probation.

What did the trial judge do here? Did he continue the appellant on probation or did he revoke probation on June 10, 1977? He orally stated he was revoking probation, but he entered no written revocation at the time and did not impose sentence. In fact, he stated to the appellant that he hoped he didn't have to take that action. The docket sheet then reflects the appellant was ordered to serve four months in county jail. Just why this was done is not clear from the record. It does not show whether the judge intended this as some form of shock probation, see Article 42.12, § 6b, V.A.C.C.P.,[2] or whether appellant was confined by an agreement with the District Attorney.[3]

■ Under any circumstances, on August 17, 1977, the appellant's conditions of probation were modified and he was released subject to such conditions. He was not sentenced, and appellant's case was not disposed of as if there had been no probation. In effect what the court did was to continue the appellant on probation. After the filing of the probation revocation data sheet and the State's motion requesting sentencing which set forth alleged violations of probation, the trial judge ordered a warrant issued for appellant's arrest. Later, he instructed the State to file a motion to revoke probation, which it did, as a first amended motion for revocation. The trial judge did not act upon said motion but held it in abeyance, sentencing appellant, over protest, relying on his plea of true at the earlier revocation hearing on June 10, 1977.

In *Wester v. State,* 542 S.W.2d 403 (Tex. Cr.App.1976), the question presented (from the same trial court) was whether a trial judge following a revocation hearing may continue a defendant on probation (although there is an adequate basis for revocation) and then subsequently upon report of another probationary violation revoke

probation without motion by the State or a hearing basing the revocation upon the ground shown at the earlier hearing. We concluded he could not.

In *Wester* the defendant entered a plea of "true" to the first count of the revocation motion and the other two were abandoned by the State. The trial judge announced that the defendant would be continued on probation, modified the conditions of probation requiring Wester to serve thirty days in jail. To the order amending the probationary conditions were found the words "No Reduction if Revoked" and "Automatic Revocation if any other Violation." Subsequently upon learning of a new theft charge against Wester the court made a docket sheet entry that probation was revoked and a few days later sentenced Wester based on his plea of "true" at the earlier revocation hearing at which time Wester had been continued on probation.

In *Wester* this court stated:

"Likewise, it follows that when a revocation proceeding has been had and the defendant continued on probation in the discretion of the court (although there was an adequate basis for revocation demonstrated at the hearing), the continuation cannot subsequently be arbitrarily withdrawn at the whim of the trial court or upon mere fact of arrest. To hold otherwise would violate due process, due course of the law of the land and fundamental fairness. The record here clearly supports the fact that the trial judge automatically revoked upon learning of a new arrest and erred in so doing.

"We cannot conclude that the attempt in the formal revocation order to base the revocation on appellant's plea of 'true' at the hearing where he was continued on probation calls for a different result."

The fact situation is slightly different in the instant case than in *Wester,* but the trial judge was attempting the same results

---

**2.** It is observed that this statute permits detention in a penal institution as a condition of probation, but it is not to exceed thirty days or one-third of the punishment assessed, whichever is lesser.

**3.** Appellant's counsel mentioned an agreement in his colloquy with the court prior to the sentencing.

and continuing the same practice attempting to avoid the effects of *Wester.* For the same reasons set forth in *Wester* we set aside the order of revocation. *Sappington v. State*, 508 S.W.2d 840 (Tex.Cr.App.1974), and *Bass v. State*, 501 S.W.2d 643 (Tex.Cr. App.1973), are distinguished for the same reasons set forth in *Wester.* *Traylor v. State*, 561 S.W.2d 492 (Tex.Cr.App.1978), is also distinguishable on its facts.

If a revocation hearing had been conducted upon the State's first amended motion to revoke probation filed just prior to sentencing and the sufficient proof on any of the counts of that motion had been offered, the question before us would never have been presented.

The State relies upon *Ex parte Miller*, 552 S.W.2d 164 (Tex.Cr.App.1977). There this court held that despite an order of revocation a defendant is still subject to the conditions of probation pending an appeal. This is so because the appeal in effect suspends the order of revocation until the mandate of this court is issued. Miller thus can have no application to the instant case where there was no sentence imposed and no appeal.

The judgment is reversed and remanded.

PHILLIPS, Judge, concurring.

The facts of this case are adequately set out in the opinion of Presiding Judge Onion. It is clear from a reading of *Wester v. State*, 542 S.W.2d 403, 405–406, that if a probationer is continued on probation, either expressly or impliedly, it is because the trial court has made a determination that such action is in the best interest of society, the individual probationer, and the ends of justice. See Article 42.12, Section 3, V.A.C.C.P. Subsequent withdrawal of probationary privileges cannot be arbitrary. When those privileges are subsequently withdrawn following a motion to revoke probation and a hearing, it is because after reviewing the facts alleged to support the motion the trial court determines it is no longer in the best interest of society or the probationer to permit that probationer the privilege of conditional freedom.

This case represents the threshold question of whether the trial court, following the motion to revoke probation hearing, revoked or continued the probationer in his probationary status. This case represents a situation where the recorded words are at a total variance to the recorded behavior. Since the latter is a more objective and accurate barometer of events transpiring at times and places remote from this Court, more weight should be accorded it when reviewing appeals. This principle is traditionally applied when the accused denies having the requisite culpable mental state for commission of the crime for which he or she is convicted. We look at the testimony describing his/her conduct in committing the crime to determine if it is consistent with the required culpable mental state. If so, we consider the jury to have been supported in inferring that he acted with the alleged mens rea, notwithstanding his protestations.

Similarly, here we have words (" . . . probation you received January 23, 1976, is revoked, . . . :") that are belied by conduct (temporary four months' imprisonment, modification of probationary terms upon release from temporary confinement, and imposition of sentence only upon notice to trial court of an additional violation). There are even words that are at a variance with the initial declaration that the probation was revoked, i. e., " . . . but I will not impose sentence at this time. I will delay that action until some further date. I hope that I don't have to take that action." It is clear as day that the trial court took the cue from this Court's opinions in *Sappington v. State*, 508 S.W.2d 840, and *Traylor v. State*, 561 S.W.2d 492, and changed his expressions on the record which were condemned in *Wester v. State*, supra. Yet, the substance of the trial court's actions has not changed. It is his apparent purpose to create a class of probationers not authorized under our statutes. This class of probationers has fewer due process rights as a result of the invocation of magic words—"revoked —deferred." Theoretically, the probationer is benefitted because of this "second chance." But this "second chance" is not

sanctioned under our law. The options of the trial court are really only twofold: (1) revoke or (2) continue, with or without modifications. See Article 42.12, Section 8, V.A.C.C.P.

Thus, the objective facts of this cause demonstrate unequivocally that of the two available options, the trial court continued Mr. Wallace on probation, with a modification of probationary conditions. To have subsequently revoked that modified probation on January 31, 1978, without adducing evidence on any alleged violations of the modified terms is to deny the probationer due process, due course of the law and fundamental fairness. *Wester v. State*, supra. The procedure used also circumvents our statute on probation. Article 42.12, V.A.C.C.P.

I have equal reservations about the vitality of *Traylor v. State*, supra, because there again the invocation of magic words, i. e., "recesses this hearing pending the court's making a decision," serves to create a new class of probationer unauthorized under Article 42.12, V.A.C.C.P. After an *eight* month *recess*, revocation was deemed the appropriate discharge of the trial court's discretion. Interestingly enough, this action took place only after the State brought another violation to the court's attention. The discussion in *Traylor*, supra, also represents the creation of an impossible burden of proof on probationers. In *Wester*, supra, *Sappington*, supra, was distinguished because there was no record showing that the trial court *knew* or, if known, *relied* upon Sappington's subsequent arrest when it entered its revocation order.[1] In *Traylor*, supra, there was a clear record showing that the trial court knew of the probationer's arrest after the "recessed" hearing. However, this Court concluded that the discussion of the arrest related only to jail time credits.[2] The decision of this Court to leave the probationer-revokee-appellant with the burden of proving affirmatively that the trial court *relied* on the arrest subsequent to the recessed/deferred revocation hearing/decision is an impossible burden.

A sounder course in these turbulent waters is to reaffirm the statutory limitation on the trial court's discretion. That is, the trial court either revokes or continues, with or without modifications. There is no such animal as a quasi-revoked/quasi-continued probation. If some time is required to decide whether to reduce the term of imprisonment, then, of course, a recess for a *reasonable* period of time is appropriate.[3] The trial court in *Sappington v. State*, supra, if of the opinion that the ends of justice and the best interests of society and Sappington warranted it, should have continued the probation with the rehabilitation treatment as a new condition.

Insofar as the *Traylor* and *Sappington* decisions elevate trial courts' discretion above the statutory limitations of Article 42.12, V.A.C.C.P., they should be overruled. The schemes they foster serve only to obfuscate procedure and distort the administration of justice.

For the foregoing reasons and the reasons expressed in Presiding Judge Onion's opinion, I am of the opinion that the trial court in this case abused its discretion and the judgment should be reversed and remanded.

1. After the prior hearing no ruling on revocation was entered because the probationer requested an opportunity to undergo narcotic addiction rehabilitation treatment.

2. This conclusion is of doubtful validity since Traylor was arrested on November 12, 1976, for the "new offense" of heroin possession. The motion to revoke probation was not filed until November 16, 1976. There was no indica-

tion that a capias ever issued under the November 16 motion to revoke probation. Thus, Traylor was not under arrest from November 12, 1976, on "said cause" of the recessed hearing on the April 5, 1976, motion to revoke probation. See Article 42.03, Section 2, V.A.C. C.P.

3. I consider eight months as an inappropriately long recess. See *Traylor v. State*, supra.